John Morrison
Scott Peterson
MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiff Matthew Quinn*

**UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA - BILLINGS DIVISION**

| | |
|---|---|
| MATTHEW QUINN, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MEADOW LARK TRANSPORT, INC., MEADOW LARK COMPANIES, INC., MEADOW LARK AGENCY, INC., AMANDA ROTH, MIKE KANDAS, RON USEM, HUFFMAN, USEM, CRAWFORD, GREENBERG & SMITH, P.A,<br><br>Defendants. | Cause No: CV-22-55-BLG-SPW-TJC<br><br><br>**BRIEF IN SUPPORT OF SETTLING PARTIES JOINT MOTION FOR SETTLEMENT APPROVAL** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

I.    INTRODUCTION ........................................................................................ 1

II.   TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ................... 3

   A.  Scope and Limitations of Settlement ................................................... 3

   B.  Stipulation to Class Certification and Class Counsel ....................... 8

   C.  Stipulation to Class Counsel ............................................................ 12

   D.  Class Representative and Class Members ........................................ 12

   E.  Opportunity to Opt Out ..................................................................... 13

   F.  Use of the Settlement Fund ............................................................... 13

   G.  Payments to Class Members .............................................................. 13

   H.  Attorneys' Fees and Litigation Expenses, Administrative Expenses, and Enhancement Payments ............................................................... 15

   I.  Remainder Funds ............................................................................... 16

   J.  Release ................................................................................................ 16

   K.  Notice and Objections ....................................................................... 17

   L.  Termination of Settlement Fund ........................................................ 17

III.  ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL ................. 18

   A.  The Settlement Agreement Should Be Preliminarily Approved. ................. 18

      1.  The Settlement Agreement is the Result of Engaged, Arm's-Length Negotiations. ............................................................... 19

         a.  The Settlement Agreement is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation ................................. 21

b. The Settlement Agreement Proportionally Treats Class Members Based on Time With Meadow Lark ................................................................. 21

c. The Settlement Agreement Provides a Substantial Benefit to Class Members and Falls Within a Range of Possible Approval. ................... 22

B. The Form and Content of Notice Proposed by the Parties is the Best Notice Practicable under the Circumstances. ........................................................... 22

IV. PROPOSED SCHEDULE ................................................................................ 23

V. CONCLUSION ............................................................................................... 23

CERTIFICATE OF COMPLIANCE ....................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828 (9th Cir. 2022) .............................. 8

*Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2014) .................................................. 3

*Butler v. Unified Life Insurance*, 1:17-cv-00050-SPW-TJC ................................. 12

*Carrillo v. Schneider Logistics Trans-Loading & Distribution, Inc.*, 2014 U.S. Dist. LEXIS 22939 (C.D. Cal. Feb. 21, 2014) ....................................................... 4

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ......................... 18

*Durden v. Hydro Flame Corp.*, 1999 MT 186, 295 Mont. 318, 983 P.2d 943 ........ 8

*Gillis v. Respond Power, LLC*, 677F. App'x 752 (3d Cir. 2017) ........................... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 9

*Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ....... 19

*Iowa Pub. Employees' Ret. Sys. v. Lynch Credit Suisse Sec. USA LLC Credit Suisse Prime Sec. Servs. USA LLC*, 2024 U.S. Dist. LEXIS 163754 (S.D.N.Y. Sep. 11, 2024) ...................................................................................................................... 7

*K-Dur Antitrust Litig.*, 2007 U.S. Dist. LEXIS 99967 (D.N.J. Oct. 10, 2007) ........ 5

*Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432 (1st Cir. 2013) ............... 10

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ................................. 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615 (9th Cir. 1982) .............. ......................................................................................................... 18, 19, 20, 22

*Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. 2010).... 7

*Portal Software Inc. Sec. Litig.*, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .... 19

*Roberts v. First Fin. Planners, Inc.*, 2006 U.S. Dist. LEXIS 104476 (N.D. Miss. 2006) ...................................................................................................................... 7

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159 (11th Cir. 2010) ................................................................. 10

*Schwartz v. Dallas Cowboys Football Club*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) ............................................................................................... 19

*Stanaford v. Genovese*, 2015 U.S. Dist. LEXIS 110316 (S.D. Fla. Aug. 17, 2015)  5

*Theresa Sweet v. Cardona*, 2024 U.S. App. LEXIS 28007 (9th Cir. Nov. 5, 2024) 4

*Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150 (9th Cir. 2016) ..................... 12

*Waller v. Fin. Corp. of Am.*, 828 F.2d 579 (9th Cir. 1987) ............................. 3, 4, 8

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ............. 11

*Zetia (Ezetimibe) Antitrust Litig.*, 2019 U.S. Dist. LEXIS 206558 (E.D. Va. Oct. 1, 2019) ............................................................................................... 5

## Rules

Federal Rule 23(b)(3) ......................................................................... 11

Federal Rule 23(e)(1)(B) ..................................................................... 22

## Other

4 Newberg on Class Actions § 11:41 .................................................... 20

*Manual for Complex Litig.* (Fourth) § 21.62 n.971 (2004) ..................... 22

Matthew Quinn, as Class Representative, ("Plaintiff") and Amanda Roth and Mike Kandas ("Defendants") (each a "Party" and collectively the "Parties"), hereby move the Court for the entry of an Order granting preliminary approval of the Settlement Agreement, attached as Exhibit 1[1] to this brief.[2]

## I. INTRODUCTION

Plaintiff brought this case originally in 2022. After more than a year of litigation, the Meadow Lark entities went out of business, and Meadow Lark Agency ("Agency") declared bankruptcy. With Meadow Lark no longer appearing as a viable source of recovery, Plaintiffs then pursued claims against former Meadow Lark officers, Amanda Roth and Mike Kandas.

Meadow Lark Agency had purchased a D&O policy with a $2 million, cannibalizing policy. Two claims were made against the policy: one by the Class and one by the trustee of Agency's bankruptcy. Those entities agreed on a split of the policy that gave the trustee approximately $880,000 and the class $1.12 million.[3] They then collectively settled with the D&O carrier for the policy limits (minus defense costs).

---

[1] There are exhibits to this brief, and then there are exhibits to the Settlement Agreement. All exhibits to the brief are numbers and all exhibits to the Settlement Agreement are letters.

[2] All capitalized terms in this brief, if not defined herein, shall have the meaning that they are given in the Settlement Agreement or Settlement Fund Distribution Protocol(attached as Exhibit A to the Agreement).

[3] Defense costs will come out of the Class's settlement, up to $100,000.

While the Class wishes there were more, the reality is that there is no other viable recovery from the Officers or Meadow Lark Agency. There is no money available from the Meadow Lark entities. And beyond the policy limits, the class (*if* it prevailed) would be left chasing the personal assets of Amanda Roth and Mike Kandas. Making this even more complicated, Ms. Roth herself has since declared bankruptcy.

So this agreement serves two purposes. First, it allows the class to obtain something for its members. Even beyond the recovery questions, Kandas and Roth dispute liability here. There is no guarantee at all that the Class would prevail. And notably, the Class is obtaining a significant recovery without having to incur further expense or time and without having to incur the risk of trial.

Second, the agreement provides protection for both Ms. Roth and Mr. Kandas from any further claims. It ensures that, to their extent there is liability, their personal assets are not exposed.

Accordingly, the Parties respectfully request that the Court preliminarily approve the terms of the Settlement Agreement; approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement; confirm the scheduling of a final approval hearing; and enjoin and stay the underlying Litigation against Roth and Kandas pending the Court's final ruling approving or denying approval of the Settlement. A *Proposed Order Preliminarily*

*Approving Class Action Settlement* is submitted herewith for the Court's consideration.

## II. TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

The significant terms of the proposed Settlement Agreement are set forth below.

### A.    Scope and Limitations of Settlement

As an initial matter, this settlement is between the Class, Amanda Roth, and Mike Kandas. Ron Usem and the Huffman law firm ("collectively Usem") are not parties to this settlement.

As a non-settling defendant, Usem has no say here. Under clear Ninth Circuit law, a "nonsettling defendant, in general, lacks standing to object to a partial settlement." *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582-84 (9th Cir. 1987). This is because the non-settling entity is "ordinarily not affected by such a settlement." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014).

The only exception to this rule is when non-settling defendant can demonstrate that "it will suffer some plain legal prejudice as a result" of the settlement. *Waller.*, 828 F.2d at 583 (citation omitted). As the Ninth Circuit stated just two weeks ago, "Formal legal prejudice exists only in those rare circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to

present relevant evidence at a trial." *Theresa Sweet v. Cardona*, 2024 U.S. App. LEXIS 28007, at *23-24 (9th Cir. Nov. 5, 2024)(emphasis in original). "It is not enough for a non-settling entity to allege that the settlement *effectively* strips them of defenses or claims if nothing in the settlement agreement precludes the non-settling entity from asserting in the district court or in other litigation any claims or defenses that may be available to them." *Id.* (emphasis in original).

"This rule advances the policy of encouraging the voluntary settlement of lawsuits." *Id,* p. 20. "The interest in encouraging settlements is particularly strong in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Id.*

So certainly, a "tactical disadvantage" is not enough to confer standing. *Waller*, 828 F.2d at 584. This means that losing some advantage for class certification purposes is insufficient to establish prejudice. *Carrillo v. Schneider Logistics Trans-Loading & Distribution, Inc.*, 2014 U.S. Dist. LEXIS 22939, *5 (C.D. Cal. Feb. 21, 2014). In *Carrillo*, the non-settling defendants argued that approving settlement would make it "more difficult" for them to "oppose class certification" later on. But the Court noted that this was purely a "tactical disadvantage" under Ninth Circuit law, and that disadvantage was insufficient to be legal prejudice. *Id.* Thus, there was no standing.

Many district courts have similarly concluded that non-settling defendants lack standing to challenge certification for settlement purposes. *See, e.g. ,In re*

*Zetia (Ezetimibe) Antitrust Litig.*, 2019 U.S. Dist. LEXIS 206558, at *26 (E.D. Va. Oct. 1, 2019)(the non-settling defendants "lack standing to challenge settlement class certification because they cannot demonstrate formal legal prejudice."); *In re K-Dur Antitrust Litig.*, 2007 U.S. Dist. LEXIS 99967, at *21 n.7 (D.N.J. Oct. 10, 2007)(non-settling defendants "lack standing to object to the proposed settlement and to class certification for settlement purposes."); *Stanaford v. Genovese*, 2015 U.S. Dist. LEXIS 110316, at *8 (S.D. Fla. Aug. 17, 2015).

To the degree there is any prejudice, there are other means to remove it. More than four weeks ago, Class Counsel sent Usem's counsel a proposed stipulation. Exh. 2. This offer stated that the Class would agree any court order approving certification for settlement purposes would (1) not be binding on Usem and (2) could not be cited or otherwise used as evidence regarding certification of a claim against Usem. In short, this offer allowed settlement to proceed while preserving and ensuring no prejudice to Usem's rights.

Notably, Usem's counsel ignored this offer. Indeed, counsel did not respond, let alone indicate why this was not an acceptable approach or otherwise engage in any discussion about potential solutions to make certification of a settlement class

palatable to Usem.[4]

While Usem has chosen not to engage in this approach, the Class stands by its offer. The requested certification here is for settlement purposes only. Should the Court approve certification for purposes of effectuating a global settlement between all parties other than Usem, the Class will stipulate that the Court's order is not binding on Usem and cannot be used or cited as persuasive authority or evidence in support of certification of class claims against Usem. Simply stated, if and when certification is sought against Usem, it will be as though no previous order was issued.

This approach is common. For example, a New York federal court approved a settlement while also ruling:

> The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any non-settling Defendant to contest certification of any non-settlement class proposed in this Action. The Court's findings in this Final Judgment and Order of Dismissal shall have no effect on the Court's ruling on any motion to certify any class in the Action, or appoint class representatives, and no party may cite or refer to the Court's certification of the Settlement Class as binding or persuasive authority with respect to any motion to certify such class or appoint class representatives.

---

[4] In total, Class Counsel had attempted to engage Usem's counsel for more than six weeks about their position on class settlement without any substantive response until the day before this motion. Two days before this motion, Class Counsel again followed up with Usem about their position, and again noted the proposed stipulation with no response. Exh. 3. For whatever reason, Usem has been unwilling to even discuss this stipulation as possible means of avoiding (1) involving this Court into an unnecessary dispute and (2) delaying settlement checks to over 600 drivers who have no other meaningful means of recovery.

*Iowa Pub. Employees' Ret. Sys. v. Lynch Credit Suisse Sec. USA LLC Credit Suisse Prime Sec. Servs. USA LLC*, 2024 U.S. Dist. LEXIS 163754, at *10 (S.D.N.Y. Sep. 11, 2024).

Similarly, a Michigan Court deemed a non-settling defendant's concern about settlement certification as "unfounded." *In re Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 77645, at *39 (E.D. Mich. 2010). The Court's order made clear that settlement certification would not prejudice defendant's ability to contest certification and concluded that the defendants should "rest assured" that their rights were fully protected regardless of settlement approval. *Id.*

A Mississippi court's preliminary approval order also noted that the classes were "certified solely for settlement purposes" and that the settlement certifications were "without prejudice to the non-settling Defendants' right to subsequently contest class certification for litigation purposes." *Roberts v. First Fin. Planners, Inc.*, 2006 U.S. Dist. LEXIS 104476, at *8 (N.D. Miss. 2006).

In sum, to the degree Usem's concerns[5] here are about settlement certification later impacting certification against Usem, there are many non-adversarial ways to address that. The Class has been, and remains, very open to language that fully ensures Usem's rights are preserved to later contest certification without the

---

[5] To be clear, Class Counsel is speculating as to what Usem's concerns could be as Usem simply has not (despite numerous requests) stated its basis for objecting to a settlement it's not a party to and is not bound by.

settlement certification in any way prejudicing those rights.

Beyond certification, prejudice is even harder to prove here because this case turns on substantive, Montana law. The only time courts generally recognize that a party can establish prejudice is when the non-settling entity potentially could lose its right to contribution and indemnification. *Waller,* 828 F.2d at 583.

But under Montana law, a settlement prevents the existence of a contribution or indemnity claim. As the Montana Supreme Court has stated, "a settlement by one tortfeasor precludes claims for both contribution and indemnity against the settling tortfeasor, irrespective of the nature of the underlying tort claim." *Durden v. Hydro Flame Corp.*, 1999 MT 186, ¶ 31, 295 Mont. 318, 983 P.2d 943. This is because public policy is best served by encouraging settlements. *Id,* ¶ 20.

Simply stated, losing an indemnity or contribution claim due to settlement is not prejudice under Montana law because there is no right to pursue such claims when a settling defendant buys its peace. So here too, Usem has no basis for standing.

## B.    Stipulation to Class Certification and Class Counsel

The settling parties stipulate to class certification for the purposes of settlement only. Beyond this stipulation, all aspects of Rule 23 are satisfied.

The class has approximately 600 class members, so it satisfies the numerosity requirement of Rule 23. Exh. 1, A-1; *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022) (District Court erred in finding numerosity was not

satisfied when reasonable evidence showed approximately 300 class members).

Matthew Quinn is an adequate class representative and class counsel is also adequate. There is no known conflict of interest between Mr. Quinn and other class members. And both Mr. Quinn and Class Counsel have vigorously pursued this case. Indeed, when Meadow Lark filed bankruptcy, they continued pursuing the case against new defendants. Both Quinn and Class Counsel would be prepared to pursue this further (indeed, they are against Usem), but for the reasons stated in detail below, it makes no sense to continue the fight against Kandas and Roth when the policy limits will be exhausted.

Mr. Quinn's claims are also typical of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (noting that "typicality" is a "permissive standard" that the representatives claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."). As a former Meadow Lark lease driver himself, Quinn's claims mirrors those of other Class Members.

Commonality is also present as the drivers were subject to the same form agreement. *See* Exh. 4, Collett Depo., 194:13-16 (noting the employees all "signed standard form contracts"). This form contract makes this case ideal for class adjudication. As the First Circuit has observed, "Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does

not depend on extrinsic evidence that would be different for each putative class member." *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013). The Eleventh Circuit has likewise observed, "It is the form contract, executed under like conditions by all class members, that best facilitates class treatment." *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159, 1171 (11th Cir. 2010). And the Third Circuit has similarly stated, "federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment." *Gillis v. Respond Power, LLC*, 677F. App'x 752, 756 (3d Cir. 2017). Similarly, settling defendants' role in creating this form contract is a common factual question, and whether defendants have any culpability for that role is likewise a common legal question.

Beyond the contract, common questions exist of whether charges (which were the same for all class members) were legal under federal and Montana law. As Meadow Lark stated during its 30(b)(6) deposition, all leased drivers were subject to the same expense deductions and at the same rate. *See* Exh. 4, Collett Depo, 195:11-196:11. By way of example, a common question exists as to whether these leased drivers were employees (not independent contractors) given that they were all subject to same policies and expectations not only of other leased drivers but also employee drivers. If they were employees, there also is a common question of whether the same charges to all drivers were the responsibility of Meadow Lark under Montana's employee indemnification statute. Likewise, common questions

exist regarding the degree to which settling defendants were involved in decision-making in implementing those charges, and to what degree they were unjustly enriched.

Federal Rule 23(b)(3) is also satisfied because the legal issues here predominate over any individual issues. This includes questions of whether the contract drivers were employees and not independent contractors, whether the form contract violated federal law, and whether the amounts that Meadow Lark deducted from the drivers' pay were the employer's responsibility of Meadow Lark and were wrongly billed to the drivers. Likewise, common questions exist about the defendants' respective roles in implementing these universal policies, and common questions exists if there is any culpability for the same. There are no individual issues because each of these drivers were subject to the same systematic policies and procedures, the same form contract, and received the same misrepresentations.

Even the damages are similar because the alleged harm is the same—forcing the "owner-operator" drivers to pay out-of-pocket costs that they were not legally responsible for. These amounts are subject to economic calculation while the amount each class member is awarded may be different, the NInth Circuit is clear that variations in damages alone does not affect certification. *Leyva v. Medline Indus. Inc*., 716 F.3d 510 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010)). This rule is "well settled" within the Circuit's precedent. *Vaquero v. Ashley Furniture Indus*., 824 F.3d 1150, 1155 (9th

Cir. 2016). All that is required is that class members experienced similar harm, which exists here through Meadow Lark illegally designating the drivers as "independent contractors" and thereby, passing along costs that were Meadow Lark's responsibility.

For all these reasons, a class action presents the superior method for adjudicating this matter. There are no individualized questions. And rather than 600 drivers each litigating their claim in 600 different matters, the entire matter can be addressed in a single case.

## C.     Stipulation to Class Counsel

The parties have also stipulated to the appointment of John Morrison and Scott Peterson as Class Counsel. Class Counsel is quite experienced in handling class actions. A little over three years ago, counsel settled an $8 million, nationwide class action before this Court. *Butler v. Unified Life Insurance*, 1:17-cv-00050-SPW-TJC. Accordingly, they are sufficiently experienced and competent to represent the Class.

## D.     Class Representative and Class Members

Matthew Quinn is designated the Class Representative and the Class is defined to include:

> All former drivers who leased trucks and drove under Meadow Lark's DOT authority and had deductions taken from their compensation in any week within the United States at any time during the period beginning five years prior to the filing of the First Amended Complaint (filed March 29, 2024) against Ms. Roth and Mr. Kandas.

Based on data from Meadow Lark, the Settling Parties have identified approximately 609 individuals who fit the class definition. The Settling Parties have considered this list of individuals to be Class Members.

### E.    Opportunity to Opt Out

All identified Class Members will receive notification of the Settlement Agreement, and they will be provided 45 days to opt out.

### F.    Use of the Settlement Fund

Under the Settlement Agreement, the Settlement Fund will be used to (a) make payments Class Members; (b) pay applicable Administrative Expenses; (c) pay applicable Attorneys' Fees and Litigation Expenses awarded by the Court to Class Counsel; (d) pay Enhancement Payments awarded by the Court; and (e) allocate any Remainder Funds as outlined in the Settlement Agreement and as set forth herein below.

### G.    Payments to Class Members

All Class Members will receive a check with no need to file proof of claim. *See* Exh. A (Distribution Protocol). The Settlement Spreadsheet ("Spreadsheet") will be used by the Settlement Administrator to determine Payment Amounts. In short, Class Members will be paid a daily rate for each day they were under contract with Meadow Lark.

The Distribution Protocol specifically outlines how the Daily Rate will be determined. The spreadsheet contains a start date and end date that each Class

Member was with Meadow Lark. For the few who have no end date, a date has been provided for them in accordance with procedures (outlined below) based on their start date. The spreadsheet then determines how many collective days the entire Class was under contract with Meadow Lark. Whatever net proceeds remain after attorneys' fees and other expenses will be divided by the total days to determine the daily rate. For each Class Member, the daily rate is then multiplied by the Class Members Contract Term to determine a Payment Amount.

All Class Members were identified by Meadow Lark's internal records during discovery. Approximately 70 individuals had no end date. Class Counsel has either emailed or called all 70 individuals to determine an end date. After this outreach, only 14 Class Members have no end date. The parties have created Imputed End Date for each individual to determine the Contract Term for these 14 individuals.[6] That system is as follows:

- For Class Members whose Start Date is from January 1, 2019 to December 31, 2019, their Imputed Contract Term shall be 1000 days.[7]

- For Class Members whose Start Date is January 1, 2020 to December 31, 2020, their Imputed Contract Term shall be 550 days.

---

[6] Prior to knowing the Net Proceeds available for distribution, it is not possible to determine with precision the amounts to be paid Class Member. The approximate Payment Amounts set forth below are based on an assumed Net Proceeds of $550,000.

[7] There are no Missing End Dates for Class Members whose Start Date is between July 17, 2019 to December 31, 2019.

- For Class Members whose Start Date is January 1, 2022, to October 31, 2022, the Imputed Contract Term shall be 70 days.

- For Class Members whose Start Date is January 1, 2022, to October 31, 2022, the Imputed Contract Term shall be 70 days.

- For Class Member whose Start Date is November 1, 2022 onward, the Imputed Contract Term shall be 40 days.

The number of days for each imputed end date were based on those who had missing dates but responded. In short, each imputed date is an approximation based on average of those responses, and then deviated downward to avoid rewarding individuals for not responding.

Settlement Checks mailed to Class Members but not deposited within one-hundred eighty (180) calendar days will be void and the amounts will remain in the Settlement Fund for use as Remainder Funds, as discussed below.

## H. Attorneys' Fees and Litigation Expenses, Administrative Expenses, and Enhancement Payments

The Settling Parties understand that Class Counsel will submit to the Court an application for attorneys' fees in the amount of not more than 33.33% of the Settlement Fund; an application for out-of-pocket class litigation expenses of not more than $30,000; and an application for Enhancement Payments to the Class Representative in the amount of $10,000. The amount of these Attorneys' Fees and Litigation Expenses, and Enhancement Payments will be distributed out of the Settlement Fund. Defendants will not object to the request if it meets the requirements of this paragraph and the Settlement Agreement. In the event that the

Court does not order an award of attorneys' fees of 33.33% of the Settlement Fund, the Parties have agreed that the Settlement Agreement is voidable at the option of Class Counsel.

Administrative expenses for the settlement will also be deducted from the Settlement Fund.

## I.     Remainder Funds

For purposes of the Settlement, "Remainder Funds" means the amount remaining in the Settlement Fund, if any, after subtracting Payment Amounts to Class Members that have been cashed or deposited within one-hundred eighty (180) calendar days, Administrative Expenses, Attorneys' Fees and Litigation Expenses, and Enhancement Payments approved by the Court. Remainder Funds will be distributed by the Settlement Administrator to such charitable organizations approved by the Court (following motion by the Settling Parties) no earlier than one-hundred eighty (180) calendar days after the latest dated Settlement Check, plus an appropriate buffer, to ensure that all Settlement Checks that are not void may be deposited and that such deposits are reflected in the Settlement Fund.

## J.     Release

In exchange for the benefits of the Settlement, the Class will dismiss this litigation against Ms. Roth and Mr. Kandas with prejudice. Additionally, the Class will release and waive, and covenant not to sue, Roth and Kandas again for any claims, demands, actions, or causes of actions. This release will apply without

limitation to any and all claims, demands, actions, or causes of action of any kind or nature whatsoever. The Release will be effective with respect to all Class Members regardless of Payment Amount.

### K. Notice and Objections

The Settlement Agreement provides that a written Settlement Notice, substantially in the form of Exhibit B, will be emailed directly to each Class Member. Because people rarely change emails, and because the Settling Parties have emails for each Class Member, the Settling Parties believe email constitutes the best notice under the circumstances. For any email notices that bounce back, a Settlement Notice will be mailed. In addition, the Class Settlement Notice, and other key documents will be publicly available at www.leasedtrucksettlement.com.

All such Notices will explain the terms and conditions of the Settlement Agreement and the Class Members' rights with respect to the Settlement Agreement, including the right to object to the Settlement, and will be in plain language that is readily understandable.

No later than twenty-one (21) calendar days after the Court issues a Preliminary Approval Order, the Settlement Administrator will begin emailing the Settlement Notices, and implementing the settlement website.

### L. Termination of Settlement Fund

Once all Settlement Funds have been distributed to Class Members, and any Remainder Funds have been identified and distributed pursuant to the Settlement

Agreement, the Settlement Administrator will provide a complete accounting to counsel to the Settling Parties. Those Parties will then file a report with the Court seeking an order confirming that the purpose of the Settlement Fund has been fulfilled and submit a proposed order authorizing the Settlement Administrator to terminate the Settlement Fund.

## III.     ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

In this Motion, the Settling Parties request that the Court: (i) preliminarily approve the terms of the Settlement Agreement; (ii) approve the form, content, and method of delivering notice to the Class Members as set out in the Settlement Agreement; and (iii) order a schedule in accordance with the deadlines proposed in the Settlement Agreement. The Settlement Agreement represents the Settling Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of absent Class Members. Accordingly, the Settlement meets the threshold requirements for preliminary approval, especially in light of the "strong judicial policy that favors settlements [of] complex class action litigation." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982)).

### A. The Settlement Agreement Should Be Preliminarily Approved.

A motion for preliminary approval of a class action settlement does not require the Court to make a conclusive finding that the terms are "fundamentally fair,

adequate, and reasonable." *Officers for Justice*, 688 F. 2d at 625 (discussing the "universally applied standard" for final approval of proposed class-action settlements). That issue is appropriate for the Court to decide only after a formal fairness hearing, where Class Members have the opportunity to be heard and to present any objections to the settlement. At the preliminary approval stage, "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the Court should direct that the notice be given to the class members of a formal fairness hearing." *In re: Portal Software Inc. Sec. Litig.*, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007) (quoting *Schwartz v. Dallas Cowboys Football Club*, 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001)); *accord Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 at *7 (N.D. Cal. Apr. 29, 2011) (collecting cases). The Parties' Settlement Agreement is the product of serious and informed arm's-length negotiations and falls well within "the range of possible approval" sufficient to warrant its preliminary approval.

### 1. The Settlement Agreement is the Result of Engaged, Arm's-Length Negotiations.

The Court's primary responsibility on a motion for preliminary approval is to ensure that the settlement agreement does not appear to be "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*,

688 F. 2d at 625. Accordingly, "[t]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11:41. Such a presumption is appropriate here.

Whatever the Settling Parties disagreements about the merits, the consensus is that settling for the Remaining Policy Limits serves everyone's interest. For Kandas and Roth, it protects them from exposing their personal assets. And for the Class, it allows the drivers to collect something when there exists no other meaningful path for recovery.

The timing is also important here. This is a cannibalizing policy. The more the Parties contest this matter, the more the policy limits would dwindle due to defense cost. Because the policy limits have been paid early in the process, a relatively minimal amount has been expended in defense costs, leaving more available for Class Members.

Thus, the Parties' agreement to settle this litigation reflects well-informed and engaged arm's-length bargaining. Class Counsel have litigated numerous class actions. For their part, Defendants are also represented by highly experienced counsel who are likewise experienced in class actions. It is the collective wisdom of all attorneys involved that this settlement is in the best interest of all involved.

In sum, the Settlement Agreement is not the product of collusion; to the contrary, it reflects the independent judgment of counsel for both Parties that its

terms are fair and reasonable under the circumstances. Accordingly, it should receive preliminary approval and should proceed to a fairness hearing.

### a. The Settlement Agreement is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation.

As indicated above, the primary purpose if this Settlement is to ensure the Class obtains something. Continuing to litigate the case would risk the Class obtaining nothing. Indeed, Ms. Roth has already filed bankruptcy, and one would assume that Mr. Kandas may have to explore that same option if a large judgment is obtained against him. Continuing to litigate would only cause the policy limits to dwindle as the policy is cannibalizing. Under the circumstances, the Class taking the most they can from the Remaining Policy Limits is unquestionably the best option.

### b. The Settlement Agreement Proportionally Treats Class Members Based on Time With Meadow Lark

The Settlement Agreement provides Class Members a settlement commensurate with the time they worked. For instance, while Class Members who only worked a few days will receive $25, other drivers who worked beyond 4 years will receive more than $6,000. Put another away, Class Members receive compensation proportional to their possible damages based on time.

The Parties have also agreed that Mr. Quinn may request a Class Representative payment of $10,000. An award for Mr. Quinn for his time in this case and commitment to the class action is permissible and promotes a public policy of

encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litig.* (Fourth) § 21.62 n.971 (2004). Settling defendants do not oppose a Class Representative payment to Mr. Quinn as provided in the Settlement Agreement.

### c. The Settlement Agreement Provides a Substantial Benefit to Class Members and Falls Within a Range of Possible Approval.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F. 2d at 628 (citations omitted). Here, the Settlement Agreement potentially allows for recovery of over $6,000 without Class Members ever having to prove they incurred any out-of-pocket expenses.

### B. The Form and Content of Notice Proposed by the Parties is the Best Notice Practicable under the Circumstances.

Once a settlement receives preliminary approval, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal...." Fed. R. Civ. P. 23(e)(1)(B). The Parties believe the Settlement Agreement establishes a notice procedure that satisfies this "reasonable" requirement. The Settlement Agreement calls for a process that the Parties anticipate will provide individual email notice to all Class Members. This Notice (attached to the Settlement Agreement Exhibit B) outlines in plain language the terms of the Settlement Agreement, the effect of the Settlement Agreement, how to opt out, and how to

object if a Class Member dislikes the Settlement Agreement. It also provides a website where Class Members can obtain more information.

## IV.     PROPOSED SCHEDULE

The parties propose that the Court provide the following deadlines:

| | |
|---|---|
| Notices emailed to Class Members | No later than 21 days after preliminary approval |
| Plaintiff to file motion for attorney's fees, costs, and Class Representative fee | No later than 21 days after preliminary approval |
| Deadline for Class Members to object to Settlement, or Class Counsel's petition for attorney's fees and costs | No later than 45 days after Settlement Notices are e-mailed |
| Parties to file motion and briefs for final settlement approval | 21 days before the fairness hearing |
| Deadline for Class Members to file notice to appear at fairness hearing | 14 days before the fairness hearing |
| Fairness hearing | TBD[8] |

## V. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter their proposed order:

1.     Certifying a Class for Settlement purposes only, and appointing Class

Counsel;

---

[8] From whatever day the Court grants preliminary approval, it needs to provide an approximately 80-day buffer between when approval is granted and when the hearing is set. For example, the settlement administrator has 21 days after approval to email out notices. Class Members also have 45 days to object or opt out. So at a minimum, that will take 66 days. Notably, this date will be included in all Class Notices.

2. Preliminarily approving the terms of the Parties' Settlement Agreement;

3. Approving the form, content and method of delivering notice to the Class Member set forth in the Parties' Settlement Agreement and in the exhibits thereto;

4. Scheduling a final approval hearing in accordance with the deadlines provided in the Settlement Agreement; and

5. Enjoining and staying the underlying Litigation pending the Court's final ruling approving or denying approval of the Settlement Agreement.

DATED this 20 day of November 2024.

By:   /s/ John Morrison
        John M. Morrison
        Scott Peterson
        MORRISON SHERWOOD WILSON DEOLA PLLP
        *Attorneys for Plaintiffs*

By:   /s/ Nathan Huey
        Nathan Huey
        GORDON REES SCULLY MANSUKHANI
        *Attorney for Defendant Michael Kandas*

By:   /s/ Dave McLean
        Dave McLean
        MCLEAN AND ASSOCIATES
        *Attorney for Defendant Amanda Roth*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 11(4)(e) of the Montana Rules of Appellate Procedure, I certify that this Brief is printed with a proportionately spaced Garamond text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word for Mac 2016 is 5,548 not averaging more than 280 words per page, excluding caption, certificate of compliance, and certificate of service.

By:    /s/ John Morrison
              John M. Morrison
              MORRISON SHERWOOD WILSON DEOLA PLLP