IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

MATTHEW QUINN, an individual, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

MEADOW LARK TRANSPORT, INC.; MEADOW LARK COMPANIES, INC.; MEADOW LARK AGENCY, INC.; AMANDA ROTH; MIKE KANDAS; RON USEM; and GREENBERG, SMITH, AND ABRAHAM, P.A., f/k/a HUFFMAN, USEM, CRAWFORD, GREENBERG & SMITH, P.A.,

Defendants.

CV 22-55-BLG-SPW-TJC

**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE**

Presently before the Court are the parties' Joint Motion for Final Approval of Class Action Settlement (Doc. 171) and Plaintiff's Motion for Attorney Fees, Costs, and Enhancement Payment (Doc. 151). For the following reasons, the Court recommends the motions be **GRANTED**.

## I. PROCEDURAL BACKGROUND

On May 8, 2026, the Court entered an Order granting preliminary approval of the class action settlements in this matter (Doc. 150) (the "Preliminary Approval Order"), preliminarily approving the Class Action Settlement Agreement between

Plaintiff and Defendants Amanda Roth and Mike Kandas (the "Officer's Settlement Agreement"), and the Class Action Settlement Agreement between Plaintiff and Defendants Ron Usem and Greenberg, Smith and Abraham, P.A., f/k/a Huffman, Usem, Crawford, Greenberg & Smith, P.A. (the "Usem Settlement Agreement") (collectively, the "Settlement Agreements"). This order also conditionally certified the Class for settlement purposes, appointed the Class Representative and Class Counsel, approved the form, content, and method of delivering Notice, and directed that Notice be given to the Class Members.

Class Members were then notified of the terms of the proposed settlements and notified of the right to be heard at a Fairness Hearing to determine whether the terms and conditions of the Settlement Agreements are fair, reasonable and adequate for the release of the claims contemplated by the Settlement Agreements. Notice was provided via email. For those emails that bounced back, notices were sent via mail.

Shortly after the notices were sent, Class Counsel filed a motion for fees and costs. (Doc. 151.) Class Counsel requested 33.33% of the settlement as fees. The motion also requested reimbursement for litigation expenses, and an enhancement for Matthew Quinn based on his role as class representative. The amount of fees was noted in the Class notices, and the brief itself was made available on the class website, leasedtrucksettlement.com.

On June 30, 2026, following a telephonic status conference regarding undeliverable Settlement Notices, the Court ordered that new notices be mailed to these undeliverable addresses no later than July 8, 2026, and extended the deadline for Class Members to object to the settlements from July 13, 2026, to July 31, 2026. (Doc. 160.)

The July 31 deadline passed without any class members opting out or objecting to the settlement. There were also no objections to Class Counsel's fee petition.

On August 5, 2026, the parties jointly filed a motion for final approval. (Doc. 171.) On August 26, 2026, the Court held a fairness hearing. (Doc. 177.) No class members objected at the hearing.

## II. FINDINGS AND RECOMMENDATIONS

Having heard the presentation of Class Counsel and Defendants' Counsel, having reviewed all the submissions presented with respect to the proposed settlements, having determined that the settlements are fair, adequate and reasonable, having considered the Attorneys' Fees, Litigation Expenses, and Enhancement Payment application made by Class Counsel (Docs. 151, 152), and having reviewed the materials in support thereof, and good cause appearing, the Court FINDS AND RECOMMENDS AS FOLLOWS:

/ / /

1. The capitalized terms used herein shall have the same meaning as defined in the Settlement Agreements except as may otherwise be ordered.

2. The Court has jurisdiction over the subject matter of this Litigation and over all claims raised therein and all Parties thereto, including Class Members and their claims.

3. **Certification of the Settlement Class.** Unlike a class certified for litigation, the Class here is certified solely for purposes of effectuating the settlements. The Settlement Agreements stipulate to class certification for settlement purposes only, and the Court conditionally certified the Class in the Preliminary Approval Order. Having now conducted the rigorous analysis required by Federal Rule of Civil Procedure 23, and having considered the record, the Settlement Agreements, and the submissions of the Parties, the Court finds that each requirement of Rule 23(a) and Rule 23(b)(3) is satisfied and hereby recommends certification, for settlement purposes only, of the following Class:

> All former drivers who leased trucks and drove under Meadow Lark's DOT authority and had deductions taken from their compensation in any week within the United States at any time during the period beginning five years prior to the filing of the First Amended Complaint (filed March 29, 2024) against Ms. Roth and Mr. Kandas.

4. **Numerosity — Rule 23(a)(1).** The Class is so numerous that joinder of all members is impracticable. Based on Meadow Lark's internal records produced in discovery, the Parties have identified approximately 608 individuals

who fall within the Class definition. A class of this size plainly satisfies Rule 23(a)(1). *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

5. **Commonality — Rule 23(a)(2).** There are questions of law and fact common to the Class whose resolution will generate common answers apt to drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Every Class Member leased a truck and drove under Meadow Lark's DOT authority pursuant to the same standard form lease and independent contractor agreements, was subject to the same categories of compensation deductions, and was charged at the same rate. Common questions include whether the form agreements permitted the deductions taken, whether those deductions violated applicable law, and whether Defendants may be held responsible for them. Because the operative contracts are form contracts interpreted uniformly across the Class, these questions are susceptible to common proof and common resolution. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013).

6. **Typicality — Rule 23(a)(3).** The claims of the Class Representative are typical of the claims of the Class. Matthew Quinn is a former Meadow Lark lease driver who signed the same form agreements and had the same categories of deductions taken from his compensation as the other Class Members. His claims arise from the same course of conduct and are based on the same legal theories as

the claims of the Class. *See Hanlon*, 150 F.3d at 1020. No unique defense applicable only to Mr. Quinn threatens to become the focus of the litigation.

7. **Adequacy — Rule 23(a)(4).** The Class Representative and Class Counsel have fairly and adequately protected the interests of the Class. Mr. Quinn has no known conflict of interest with other Class Members; his interest in maximizing the recovery from the available insurance proceeds is aligned with theirs; and he has participated actively in the prosecution of this case through more than four years of litigation, including the pursuit of claims following the bankruptcy of the Meadow Lark entities. Class Counsel, John Morrison and Scott Peterson of Morrison Sherwood Wilson Deola, PLLP, are experienced class action litigators who have prosecuted this action vigorously, including through contested motions to dismiss, discovery, cross-motions for partial summary judgment, and protracted settlement negotiations, and who previously served as class counsel in a nationwide class action settlement approved by this Court. *See Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW-TJC (D. Mont.). Neither the Class Representative nor Class Counsel has any interest antagonistic to the Class.

8. **Predominance — Rule 23(b)(3).** Questions of law and fact common to the Class predominate over any questions affecting only individual members. The central liability questions in this case—the meaning and enforceability of the standard form lease agreements, the propriety of the uniform deduction practices

applied under them, and Defendants' respective responsibility for those practices—turn on evidence common to the Class rather than on member-specific proof. That Class Members worked for differing lengths of time and therefore sustained differing amounts of damages does not defeat predominance; damages here are calculated mechanically from Meadow Lark's own records using a uniform daily rate applied to each Class Member's contract term. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

9. **Superiority — Rule 23(b)(3).** A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The individual recoveries at stake—ranging from the minimum payment to a projected maximum of just over $10,000—are small relative to the cost of individually litigating claims of this complexity against multiple defendants, several of whom are insolvent or in bankruptcy. Few, if any, Class Members would have the incentive or means to pursue individual actions, and hundreds of separate suits chasing two rapidly eroding, cannibalizing insurance policies would be wasteful and would risk inconsistent results and a race to exhaust the available limits. No Class Member has expressed a desire to control the prosecution of a separate action, and the Court is aware of no other litigation concerning this controversy commenced by Class Members. Concentrating the claims in this forum is

appropriate, as the Litigation has been pending before this Court since 2022. Because the Court certifies the Class for settlement purposes only, it need not consider the manageability of a trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

10. **Appointment of Class Representative and Class Counsel.** The Court confirms the appointment of Matthew Quinn as Class Representative and, pursuant to Rule 23(g), confirms the appointment of John Morrison and Scott Peterson of Morrison Sherwood Wilson Deola, PLLP, as Class Counsel. The Court finds that Class Counsel have identified and investigated the claims, are experienced in handling class actions and claims of the type asserted here, are knowledgeable of the applicable law, and have committed and will continue to commit the resources necessary to represent the Class.

11. **Effect of Settlement-Only Certification.** The certification of the Class is for settlement purposes only. If the Settlement Agreements do not become effective for any reason, this certification shall be automatically vacated, and each Party shall be restored to its respective position as it existed immediately prior to the execution of the Settlement Agreements, without prejudice to any Party's position on the issue of class certification or any other issue. In that event, neither this Recommendation nor any of the Findings herein shall be used or cited as evidence or precedent in this or any other proceeding, and the Settling Parties

expressly reserve all rights to contest class certification.

12. **Adequacy of Notice.** The Court finds that the Class Notice Program, set forth in Section 11 of the Officer's Settlement Agreement and effectuated pursuant to the Preliminary Approval Order and the Court's June 30, 2026, Order (Doc. 160), was the best notice practicable under the circumstances. The Court-appointed Settlement Administrator, Verita Global (formerly KCC Class Action Services, LLC), emailed the Class Settlement Notice to Class Members on May 29, 2026, and established a dedicated settlement website at LeasedTruckSettlement.com the same day. Where email notice was not successfully delivered, notice was mailed to the Class Member's last known address, and where mailed notice was returned as undeliverable, the Settlement Administrator and Class Counsel undertook additional efforts—including telephone contact, text messages, address searches, and skip tracing—to locate Class Members and re-mail notice. The Notice provided due and sufficient notice to Class Members, in plain and readily understandable language, of the terms of the Settlement Agreements, the Class Members' rights, the right and process to object and to request exclusion, and the right to appear and be heard at the Fairness Hearing (including when the Fairness Hearing would be held). Notice therefore satisfied the requirements of Rules 23(c)(2)(B) and 23(e)(1) of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.

13. The Court hereby determines that there is no just reason for delay and recommends approval of the settlements, including the plans for implementation and distribution of the settlement relief, and finds that the settlements are, in all respects, fair, reasonable and adequate to the Class Members, within the authority of the Parties and the result of extensive arm's-length negotiations. The Parties shall effectuate the Settlement Agreements in accordance with their terms. The Settlement Agreements and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

14. **Rule 23(e)(2) Findings.** The Court finds, after considering the factors set forth in Rule 23(e)(2), that the Settlement Agreements are fair, reasonable, and adequate: (A) the Class Representative and Class Counsel have adequately represented the Class; (B) the Settlement Agreements were negotiated at arm's length between experienced counsel, over an extended period and in two separate negotiations, with no indicia of collusion; (C) the relief provided for the Class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the Class (automatic payment by check with no claim form or proof of out-of-pocket loss required), the terms of the proposed award of attorney's fees, and the absence of any side agreement affecting the Class; and (D) the Settlement Agreements treat Class

Members equitably relative to one another, allocating the Net Proceeds pro rata according to each Class Member's contract term under a uniform daily rate.

15. **Ninth Circuit Approval Factors.** The Court has also considered the factors identified in *Rodriguez v. West Publishing Corporation*, 563 F.3d 948, 963 (9th Cir. 2009), and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011), and finds that each supports final approval. Meaningful risk remained as to both liability and, more acutely, collectability. The Meadow Lark entities are defunct, Meadow Lark Agency and Defendant Roth have filed for bankruptcy, and the only realistic sources of recovery were two cannibalizing insurance policies that continued litigation would have steadily consumed. Further litigation would have been complex, expensive, and lengthy, with the prospect of trial and appeal reducing the very funds available to the Class. The risk of obtaining and maintaining class certification through trial was real, as the Settling Parties reserved the right to contest certification absent settlement. The amount offered—a combined Settlement Fund of approximately $1.37 million,[1] from which approximately $711,670 is projected to be distributed to Class Members—represents the realistic maximum available given the applicable

[1] Because the policy is cannibalizing, a $100,000 fund has been set aside to pay for Kandas and Roth. The amount remaining in that fund will revert to the class. Because Kandas and Roth have spent time on this case, the fund will be ultimately less than $1.37 million and can only be determined after Kandas and Roth submit their final bills following the hearing.

policy limits and the absence of any other viable source of recovery. The Parties engaged in discovery, including the Rule 30(b)(6) deposition of Meadow Lark and production of the form contracts and internal records used to identify every Class Member and contract term to enable counsel to have a clear understanding of the merits before settling. Experienced counsel on all sides recommend approval. There is no governmental participant objecting.

16. There are no objections to the settlements. No Class Member has objected to the Settlement Agreements or to Class Counsel's application for Attorneys' Fees and Litigation Expenses or the Enhancement Payment, and no Class Member has requested exclusion from the Class.

17. The Settlement Agreements are, in all respects, fair, reasonable and adequate, are in the best interests of the Class Members, and it is recommended that they be approved. The Court further recommends approval of the Settlement Fund Distribution Protocol attached as Exhibit A to the Officer's Settlement Agreement for calculating Payment Amounts and distributing Payment Amounts to all Class Members. (Doc. 148-1 at 30–34.)

18. The Judgment with respect to all claims by Class Members shall be deemed final judgments. Class Members will be bound by the Court's Final Approval Order and Judgment.

/ / /

19. All persons who have not made their objections to the settlements in the manner provided in the Settlement Agreements are deemed to have waived any objections by appeal, collateral attack, or otherwise.

20. Within the time period set forth in Section 6.1 of the Officer's Settlement Agreement, Settlement Checks shall be mailed to the Class Members. Attorneys' Fees, Litigation Expenses, and the Enhancement Payment shall be distributed out of the Settlement Fund in accordance with Section 16 of the Officer's Settlement Agreement, Section 4.4 of the Usem Settlement Agreement, and the Settlement Fund Distribution Protocol.

21. Releasing Entities have fully, finally and forever released, relinquished and discharged the Released Entities from all Released Claims, as specified in Section 12 of the Officer's Settlement Agreement and Section 5 of the Usem Settlement Agreement. Therefore, Releasing Entities will be permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting or continuing, either directly or in any other capacity, any action or proceeding in any court, agency, arbitration, tribunal or jurisdiction, asserting any Released Claims pursuant to the Settlement Agreements, or seeking an award of fees and costs of any kind or nature whatsoever and pursuant to any authority or theory whatsoever, relating to or arising from the Litigation and/or as a result of or in addition to those provided by

the Settlement Agreements.

22. The terms of the Settlement Agreements and the Court's Final Approval Order and Judgment shall have maximum res judicata, collateral estoppel, and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorney's fees, costs, interest or expenses which were or could have been asserted in the Litigation.

23. The Final Approval Order and Judgment, the Settlement Agreements, the settlements which the Settlement Agreements reflect, and all acts, statements, documents or proceedings relating to the settlements are not, and shall not be construed as, or used as an admission by or against Defendants of any fault, wrongdoing, or liability on the part of Defendants or of the validity or certifiability for litigation of any claims relating to the Litigation or of the existence or amount of any damages.

24. **Attorneys' Fees — Method and Standard.** Class Counsel have applied, pursuant to Rule 23(h), for an award of Attorneys' Fees in the amount of 33.33% of the Settlement Fund, Litigation Expenses of $28,705.00, and an Enhancement Payment to the Class Representative of $20,000.00. (Docs. 151, 152.) Because these settlements create a common fund, the Court applies the

percentage-of-the-fund method, which aligns the interests of Class Counsel with those of the Class by tying compensation directly to the recovery obtained. *See Bluetooth*, 654 F.3d at 942; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). While 25% serves as a benchmark, it is neither a ceiling nor a default; it is only a "starting point for analysis," *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case," *Vizcaino*, 290 F.3d at 1048. The Court accordingly evaluates the request against the non-exclusive factors identified in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 954–55 (9th Cir. 2015): the results achieved for the Class, the risk borne by counsel, whether counsel's performance generated benefits beyond the cash fund, the market rate in the relevant field, the burden counsel carried, and whether the representation was contingent. Having considered each, the Court finds that this case departs materially from the run-of-the-mill class action for which the benchmark was designed, and that an award of 33.33% is reasonable.

25. **Results Achieved.** Class Counsel secured a combined Settlement Fund of approximately $1.37 million—$1.12 million from the Meadow Lark Agency D&O policy and $250,000 from the Usem Defendants' professional

liability policy—from which approximately $711,670 is projected to be distributed to the Class. The average Class Member is projected to receive approximately $1,290, and the longest-tenured driver, with 1,543 days under contract, is projected to receive more than $10,000. Two features of this result deserve particular weight. First, the recovery approaches the practical ceiling: the Meadow Lark entities are defunct, Meadow Lark Agency and Defendant Roth are in bankruptcy, and both applicable policies are cannibalizing, such that every dollar of continued defense expense would have come directly out of the Class's recovery. Class Counsel's early resolution preserved nearly the entire available limits for the Class rather than allowing them to be consumed by defense costs. Second, the distribution structure Class Counsel negotiated requires no claim form, no proof of out-of-pocket loss, and no action of any kind by Class Members; every Class Member will simply be mailed a check if they fill out a W-9. A structure that delivers money to all 608 Class Members, rather than only to those with the sophistication and persistence to navigate a claims process, is a meaningful measure of the result achieved.

26. **Benefits Beyond the Cash Fund.** Class Counsel's prosecution of this action generated a substantial non-monetary benefit not captured in the Settlement Fund: Meadow Lark discontinued the lease-driver program at the heart of this case. Meadow Lark's Rule 30(b)(6) designee testified that, by August

2023—roughly a year after this case was filed—Meadow Lark had stopped signing new drivers to the challenged lease arrangement, had ended its truck-leasing programs with Ryder and Penske, and had redirected its recruiting toward company drivers. The cessation of the challenged practice spared prospective drivers from the same harm. The Ninth Circuit treats benefits "beyond the cash settlement fund" as independently relevant to the reasonableness of a percentage fee, *Online DVD-Rental*, 779 F.3d at 954–55, and this factor supports an award above the benchmark.

27. **Risk of Non-Recovery.** The risk of non-recovery in this case was not hypothetical; it was concrete and partially realized. Approximately a year into the litigation, the principal Defendant, Meadow Lark Agency, filed a Chapter 7 petition (Doc. 46), and the Meadow Lark operating entities ceased doing business, eliminating the traditional source of recovery altogether. Defendant Roth subsequently filed personal bankruptcy. At that juncture Class Counsel had already advanced approximately $30,000 in litigation expenses that the firm would have absorbed entirely, on top of years of uncompensated time, had it abandoned the case. The Court finds that this degree of risk exceeds the ordinary contingency risk contemplated by the 25% benchmark and independently justifies an upward adjustment. *Cf. Vizcaino*, 290 F.3d at 1048–50 (risk is a proper basis for exceeding the benchmark).

28. **Skill, Persistence, and Burden.** Following Defendant's bankruptcy, Class Counsel identified and developed two pathways to recovery: first, directors-and-officers coverage reaching former Meadow Lark officers Roth and Kandas for their roles in implementing the challenged deduction practices; and second, and more novel, a claim against the law firm that drafted the lease contracts, reaching that firm's professional liability coverage. The second theory required Class Counsel to amend the complaint twice (Docs. 59, 91), and to brief and defend the claim through successive motions to dismiss on both substantive and personal jurisdiction grounds. Neither recovery would exist without that work. Over nearly four years, Class Counsel prosecuted this matter through written discovery, individual and corporate depositions, a contested class certification and default judgment effort, three motions to dismiss, cross-motions for partial summary judgment on contract enforceability, three bankruptcy hearings and coordination with the bankruptcy trustee, mediation, and two separate settlement negotiations—including additional briefing occasioned by the Usem Defendants' initial posture as non-settling parties and objectors. All of this was done without compensation and while advancing costs.

29. **Market Rate and Comparable Awards.** The requested 33.33% is consistent with the prevailing market rate for contingent representation and with awards in comparable common fund cases. One empirical study placed the

average common fund award at approximately 32%, and at 34.74% when expenses are included. Silber & Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 545 (1998); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1124 (C.D. Cal. 2008); *see also* 5 Newberg and Rubenstein on Class Actions § 15:83 (6th ed.) ("fee awards in class actions average around one-third of the recovery"). Courts in this Circuit have repeatedly recognized that "in most common fund cases, the award exceeds th[e] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *accord Davis v. Symetra Life Ins. Co.*, 2025 WL 1434727, at *5 (W.D. Wash. May 19, 2025). District courts within the Ninth Circuit routinely award one-third or more. *E.g., Hallman v. Wells Fargo Bank, N.A.*, 2021 WL 9567171, at *2 (W.D. Wash. June 10, 2021); *In re Atossa Genetics, Inc. Sec. Litig.*, 2018 WL 3546176, at *1 (W.D. Wash. July 20, 2018); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *3–4 (E.D. Cal. Nov. 14, 2007). Courts in this District have also awarded attorney's fees of one-third of the recovery in common fund cases. *E.g., Anderson v. Boyne USA, Inc.*, 2025 WL 1755223, at *4 (D. Mont. June 25, 2025); *Beck v. City of Whitefish*, 2024 WL 4894183, at *6 (D. Mont. Nov. 26, 2024). The requested rate is also consistent with the standard contingency rate in individual litigation, which typically ranges from 33% to 40%.

/ / /

30. **Comparison to *Taylor v. FedEx Freight*.** The Court finds *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949 (E.D. Cal. Oct. 12, 2016) an instructive comparator. There, in a wage-and-hour action brought by 1,445 line-haul truck drivers against a solvent national defendant, the court approved a 30% fee from a $3.75 million fund, emphasizing counsel's pure contingency representation over nearly three years and the substantial risk of proceeding to trial. This case warrants more. Class Counsel here litigated nearly four years rather than three. *Taylor* involved a conventional claim against a solvent defendant, with no bankruptcy, no need to substitute defendants, and no need to develop novel insurance coverage theories; Class Counsel here confronted all of those obstacles. And where nearly one in three *Taylor* class members recovered nothing because they failed to return a claim form, each Class Member will have a check mailed to them without having to submit a form. These factors support a fee above 30%.

31. **Reaction of the Class.** The Class Settlement Notice disclosed Class Counsel's intended fee request, and Class Counsel filed the application on June 1, 2026, well in advance of the July 31, 2026, objection deadline, so that Class Members had a full and fair opportunity to be heard. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–95 (9th Cir. 2010). None of the 608 Class Members objected to the requested fees, expenses, or Enhancement Payment, and none requested exclusion.

32. **Lodestar Cross-Check.** A lodestar cross-check is permitted but not required in this Circuit, and the Court does not find one necessary here. *See Vizcaino*, 290 F.3d at 1050 & n.5; *Bluetooth*, 654 F.3d at 942, 944–45. Given the nearly four-year duration of this contingent representation, the volume of contested motion practice, discovery, and bankruptcy-related work described above, and the modest absolute size of the fund, the Court is satisfied that the percentage award does not represent a windfall and is amply supported by the work performed.

33. **Award of Attorneys' Fees and Litigation Expenses.** For the foregoing reasons, it is recommended that the Court grant Class Counsel an award of reasonable Attorneys' Fees in the amount of 33.33% of the Settlement Fund, together with reimbursement of Litigation Expenses in the amount of $28,705.00. The Court has reviewed the itemization of expenses submitted as Exhibit 2 to Class Counsel's brief (Doc. 152-2) and finds that the expenses—covering filing and service, depositions and transcripts, investigative fees, expert and consulting fees—were reasonably and necessarily incurred in the prosecution of this matter and conferred a benefit on the Class.

34. **Enhancement Payment.** The Court also recommends that Class Counsel's application for an Enhancement Payment to Class Representative Matthew Quinn in the amount of $20,000.00 ($10,000 from each set of settling Defendants) be granted. Mr. Quinn responded to written discovery, conferred

regularly with Class Counsel, made himself available throughout the substitution of Defendants, and persisted as the sole named Class Representative through nearly four years of contested litigation, including after the principal Defendant's bankruptcy. The requested award represents less than 1.5% of the Settlement Fund, is proportionate to the benefit conferred, drew no objection from any Class Member or Defendant, and is fair and reasonable. *See* 5 Newberg and Rubenstein on Class Actions § 17:13 (6th ed.); *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 WL 4473183, at *2 (S.D. Cal. Oct. 6, 2008) ($25,000 award); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16–17 (N.D. Cal. Jan. 26, 2007) ($25,000 award).

35. The Attorneys' Fees, Litigation Expenses, and Enhancement Payment awarded herein shall be paid out of the Settlement Fund in accordance with the Settlement Agreements. Administrative Expenses shall likewise be paid out of the Settlement Fund.

36. **Remainder Funds.** Settlement Checks that are not cashed or deposited within one hundred eighty (180) calendar days after the date of issue shall be void, and those amounts shall remain in the Settlement Fund as Remainder Funds. Remainder Funds shall be distributed in accordance with Sections 6.3, 6.3.1, and 6.3.2 of the Officer's Settlement Agreement, to such charitable organizations as are approved by the Court upon motion of the Settling Parties.

37. **Termination of the Settlement Fund.** Once all Settlement Funds have been distributed to Class Members and any Remainder Funds have been identified and distributed, the Settlement Administrator shall provide a complete accounting to counsel for the Settling Parties in accordance with Section 7 of the Officer's Settlement Agreement. The Settling Parties shall then file a report with the Court seeking an order confirming that the purpose of the Settlement Fund has been fulfilled, together with a proposed order authorizing the Settlement Administrator to terminate the Settlement Fund.

38. **Dismissal.** Class Counsel shall seek dismissal of this matter with prejudice as to Defendants Amanda Roth, Mike Kandas, Ron Usem, and Greenberg, Smith and Abraham, P.A., f/k/a Huffman, Usem, Crawford, Greenberg & Smith, P.A., in accordance with the Effective Date and pursuant to Section 15.3 of the Officer's Settlement Agreement and Section 6 of the Usem Settlement Agreement.

39. Except as otherwise provided herein, the parties shall bear their own costs and attorney's fees. Without affecting the finality of the Judgment to be entered, the Court reserves jurisdiction over the implementation of the settlements, including enforcement and administration of the Settlement Agreements, the distribution of the Settlement Fund, the approval and distribution of Remainder Funds, and the termination of the Settlement Fund.

## III. CONCLUSION

Based on the foregoing, it is **RECOMMENED** that:

1. The parties' Joint Motion for Final Approval of Class Action Settlement (Doc. 171) be **GRANTED**; and

2. Plaintiff's Motion for Attorney Fees, Costs, and Enhancement Payment (Doc. 151) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived. D. Mont. Local Rule 72.3.

**IT IS ORDERED**.

DATED this 28th day of August, 2026.

TIMOTHY J. CAVAN
United States Magistrate Judge